UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIFFNEY JAMISON, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-2484-B |
| ESURANCE INSURANCE SERVICES, INC., | § § § § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Esurance Insurance Services, Inc.'s (Esurance) Second Amended Motion to Dismiss or in the Alternative to Stay (Doc. 25) [hereinafter Defendant's Motion]. For the following reasons, the Court DENIES Defendant's Motion.

I.

BACKGROUND

This case is a putative class action against Esurance for violating the Telephone Consumer Protection Act of 1991 (TCPA or Act). Pub. L. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227). According to Plaintiff Jamison, Esurance made unauthorized calls to Plaintiff's and other putative class members' cellular telephones using an automatic telephone dialing system (ATDS), a pre-recorded voice message, or an artificial voice message. Doc. 7, Pl.'s First Am. Compl. ¶¶ 1–2. This not only "invaded the[ir] personal privacy," but also willfully "violated the TCPA." *Id.* ¶ 19.

Based on this, Jamison filed a complaint seeking statutory damages under the TCPA for both her and the putative class. She claims that, individually, she received dozens of calls all for the purpose of providing "her an insurance quote on behalf of Esurance." *Id.* ¶ 28. She further claims that she had not requested the quotes, did not consent to receive these calls, and on multiple occasions requested Esurance remove her number from its dialing system. *Id.* ¶¶ 21–31. Despite this, Esurance continued to contact her, invading her privacy and causing her to incur cellular telephone charges or reduce her previously-paid-for cellular telephone time. *Id.* ¶ 49. On behalf of the putative class, she claims that Esurance similarly contacted class members causing them similar harm. *Id.*

In an attempt to resolve this case, Esurance made a Rule 68 Offer of Judgment to Jamison. Doc. 26, Br. in Supp. of Def.'s Second Am. Mot. to Dismiss or Alt. to Stay 4, Ex. A. The offer would satisfy all of Jamison's claims against Esurance by: (1) paying an amount exceeding the maximum statutory damages available; (2) paying pre- and post-judgment interest; (3) paying all reasonable costs available if Jamison prevailed; and (4) stipulating to the entry of an injunction prohibiting future alleged wrongs. *Id.* at 4–5. Jamison rejected this offer. *Id.*, Ex. B.

Defendant's Motion makes standing and mootness challenges. Esurance argues Jamison lacks standing because she did not suffer an injury in fact. Defendant's Motion 6. Next, it argues that "Plaintiff's failure to accept the Offer of Judgment renders her claims moot." *Id.* at 9. And alternatively, it requests a stay pending Supreme Court ruling on two cases addressing these standing and mootness questions: *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892, and *Campbell-Ewald Co. v. Gomez*, 768 F.3d 871 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 2311. Defendant's Motion is now ripe for review.

II.

LEGAL STANDARD

Article III of the Constitution limits federal-court jurisdiction to actual "Cases" and "Controversies." U.S. Const. art. III, § 2. Where a court lacks the constitutional power to adjudicate a case, it must dismiss it for lack of subject matter jurisdiction under Rule 12(b)(1). *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party invoking federal jurisdiction, not the party moving for dismissal, bears the burden of establishing subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *In re Eckstein Marine Serv.*, 672 F.3d 310, 314 (5th Cir. 2012).

"The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's case or controversy language." *Choice Inc. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (internal quotation marks omitted). The doctrines of standing and mootness are at issue here. For standing, a plaintiff must "demonstrate a 'personal stake' in the suit." *Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011) (quoting *Summers v. Earth Island Institute*, 129 S.Ct. 1142, 1148–1149 (2009)). To demonstrate such a personal stake a plaintiff must show: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision would redress the injury. *Lujan*, 504 U.S. at 560–61. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561.

For mootness, like standing, a plaintiff must demonstrate a personal stake in the outcome of the litigation, but unlike standing, the plaintiff must demonstrate that this personal stake continues through "all stages of review, not merely at the time the complaint is filed." *Campbell-Ewald Co. v. Gomez*, 577 U.S. ___, ___ (2016) (slip op., at 6) (quoting *Arizonans for Official English v. Arizona*,

520 U.S. 43, 67 (1997)).

> "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." A case becomes moot, however, "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."

*Id.* at 6–7 (first quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. ___, ___ (2013) (slip op., at 4); then quoting *Knox v. Service Employees*, 567 U.S. ___, ___ (2012) (slip op., at 7); and then quoting *Chafin v. Chafin*, 568 U.S. ___, ___ (2013) (slip op., at 6)).

### III.

### ANALYSIS

In order to decide whether to dismiss for lack of subject matter jurisdiction, the Court must determine: (1) whether Jamison had standing to bring suit; and (2) whether Esurance's Offer of Judgment mooted Jamison's claims.

A. *Standing*

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). Congress cannot convert a generalized grievance into an individual right for standing purposes. *See Lujan*, 504 U.S. at 577. But it can create "legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *RITE—Research Improves Env't, Inc. v. Costle*, 650 F.2d 1312, 1320 (5th Cir. 1981) (quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)). The individual whose legal right is violated simply must suffer an

injury in fact. *See Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015). "Thus, where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015).

The TCPA makes it unlawful to make calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A). This provides individuals with a new legal right to be free from the intrusion of such calls. At issue is whether Jamison suffered a concrete, particularized, and actual or imminent injury (i.e., an injury in fact) resulting from Esurance's violation of this right.

While the Fifth Circuit has not addressed what injury an individual must suffer to have standing to sue for TCPA violations, two sister circuits have. The Eleventh and Sixth Circuits have analyzed whether receiving illegally sent faxes constitutes a cognizable injury in fact.[1] Their approach logically applies to other TCPA violations like unauthorized telephone contact.

In *Palm Beach Golf Center-Boca, Inc.*, the Eleventh Circuit held that illegally sent faxes created "a concrete and personalized injury in the form of the occupation of [plaintiff's] fax machine for the period of time required for the electronic transmission of the data." 781 F.3d at 1251 ("This occupation of Plaintiff's fax machine is among the injuries intended to be prevented by the statute and is sufficiently personal or particularized to Palm Beach Golf as to provide standing."). The Sixth Circuit, in *Imhoff Investment, L.L.C.*, reached the same conclusion. 792 F.3d at 633. It held that the

---

[1] The TCPA makes it unlawful "to use any telephone facsimile machine . . . to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).

individual right to have one's phone line and fax machine free from unsolicited advertisements, while statutorily-created, could afford standing if there was an injury in fact. *Id.*

To determine what constituted an injury in fact, both circuits looked to the TCPA's legislative history. *See id.* at 632–33; *Palm Beach Golf Ctr.-Boca, Inc.*, 781 F.3d at 1252; *see also* H.R. Rep. No. 102-317 (1991). The House of Representatives Report associated with the TCPA clearly states that "[t]he purpose of the bill (H.R. 1304) is to protect residential telephone subscriber privacy rights." H.R. Rep. No. 102-317, at 5. And it specifically lists two injuries that result from facsimile advertising: (1) it improperly shifts advertising costs from the sender to the recipient; and (2) advertising occupies the recipient's fax machine, making it unavailable for other messages. *Id.* at 10.

The Report does not specifically list injuries that result from telephone advertising. But parallels to the facsimile advertising injuries can be inferred. For example, cellular telephone users generally incur charges or reduction in usable minutes when they receive calls. This appears to shift some advertising cost from the caller to the call recipient. Also, the Report discusses the possibility that, in some instances, "automatic dialing systems can 'seize' a recipient's telephone line and not release it until the prerecorded message is played, even when the called party hangs up." *Id.* This appears to occupy the recipient's telephone the same way facsimile advertising occupies a recipient's fax machine. From this, the Court concludes that an individual suffers an injury in fact from unauthorized telephone contact when it causes an incurrence of charges, a reduction in usable minutes, or occupation of the telephone line, making it unavailable for other use.

At the pleading stage, general factual allegations of injury resulting from TCPA violations suffice to establish an injury in fact. *See Lujan*, 504 U.S. at 561. Here, Jamison alleged that when Esurance violated the TCPA, it caused her to incur cellular telephone charges or to reduce her

previously-paid-for cellular telephone time, and that it invaded her privacy. Doc. 7, Pl.'s First Am. Compl. ¶ 49. At this stage, this pleading is sufficient to establish an injury in fact. Therefore, Jamison has standing to bring suit.

*B.  Mootness*

Esurance argues that Jamison's failure to accept the Offer of Judgment rendered her claims moot. Defendant's Motion 9. It based its argument on *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. ___, 133 S. Ct. 1523 (2013) (assuming without deciding that Rule 68 Offer of Judgment mooted plaintiff's claim). The Supreme Court has definitively stated that this is not the case. *Campbell-Ewald Co. v. Gomez*, 577 U.S. ___, ___ (2016) (slip op., at 11) ("In sum, an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case."). Accordingly, Esurance's Offer of Judgment did not moot Jamison's claims.

*C.  Motion to Stay*

Incidental to the court's inherent power to control its docket is the power to stay proceedings before it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, the Supreme Court has characterized the circumstances in which a stay is appropriate as "rare." *Id.* at 255. A court should enter a stay only in a case of "hardship or inequity." *Id.*

The Court finds that here a stay is not appropriate. First, the Supreme Court has entered judgment on *Campbell-Ewald Co.* Thus, there is no reason to stay this case pending resolution of that one. Second, the Supreme Court likely will resolve the pending standing case, *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892, fairly soon. Because standing is a subject matter jurisdiction question, it can be raised at any time during the litigation. If the Supreme Court's ruling indicates that Jamison, in fact, does not have standing, Esurance may raise the issue at that

time. Allowing the case to proceed inflicts no significant hardship. Therefore, the Court DENIES Esurance's Motion to Stay.

IV.

CONCLUSION

For these reasons, the Court DENIES Defendant Esurance Insurance Services, Inc.'s Second Amended Motion to Dismiss or in the Alternative to Stay (Doc. 25).

SO ORDERED.

SIGNED January 27, 2016

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE